Affirmed and Opinion filed December 20, 2007








Affirmed and Opinion filed December 20, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00612-CR

_______________

 

TREMAINE DESHAIE DICKSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 248th District Court

 Harris County, Texas

Trial Court Cause No. 1051957

                                                                                                                                                

 

O P I N I O N

A jury
convicted appellant, Tremaine Deshaie Dickson, of aggravated robbery and
assessed punishment of thirty-five years= confinement.  In two issues,
appellant contends the trial court erred in preventing him from presenting
alternative perpetrator evidence and in admitting evidence of extraneous
offenses.  We affirm.

 

 

 








I. Background

On the
evening of December 10, 2005, three separate incidents of robbery occurred at
the Camden Station apartment complex in Houston, Texas.  In the
offense-at-issue, at approximately 9:45 p.m., a young man approached John
Dufour as Dufour walked his two dogs and accompanied his wife, Janna Dufour, 
to her car.  The man was running and repeating the phrase Acome get me.@  As he ran past the Dufours, the
dogs began to bark at him.  He turned around and  pointed a handgun at the
dogs, threatening to shoot them if the Dufours did not make the dogs stop
barking.  He then threatened to shoot John and Janna if they did not give him
their money.  However, when a neighbor turned on his porch light and opened the
front door, the assailant ran away without taking anything from the Dufours.

Robert Kelly
and Carlos Cruz were also robbed that night at the Camden Station apartments.[1] 
Kelly was accosted as he returned home from a Christmas shopping trip.  As he
stepped out of his van, a man walked up to him, put a gun to his throat, and asked
how much money he had.  Before Kelly could retrieve his wallet, the man struck
him twice in the head with the gun.  After obtaining Kelly=s wallet, the man demanded Kelly=s cellular phone, and struck Kelly
three times with the gun before Kelly relinquished the phone.  The assailant
proceeded to kick Kelly in the ribs before leaving.  Similarly, Cruz was robbed
as he walked towards his apartment.  As Cruz approached his apartment door, a
man addressed him, asking if he needed a woman.  When Cruz declined his offer,
the man walked past him and turned around, producing a handgun.  He demanded
Cruz=s money.  Before Cruz could turn over
his wallet, the man struck him multiple times with the handgun.  The assailant
ran away after taking Cruz=s wallet and cellular phone.








Each of
the victims spoke with police the night of the robberies.  Although their
recollections of the assailant=s description differed, all four concurred that the man was
dark-skinned, about six feet tall, wore a coat or jacket with either a skull
cap or the jacket hood up, styled his hair in braids or dreadlocks, and carried
a handgun.  However, the police identified no suspects at that time.  

A few
weeks later, as Kelly drove near the Camden Station complex, he recognized a
young African-American man sitting outside a nearby apartment complex as his
assailant.  He informed the police, who subsequently arrested appellant.  The
police created a photo line-up consisting of photographs of appellant and five
other men.  Each of the four robbery victims viewed the photo-lineup.  John
Dufour and Robert Kelly each identified appellant as their robber.  Janna
Dufour provided a tentative identification of appellant.  She stated appellant
looked more like her robber than any of the others in the lineup, but, from the
photograph, she was not certain whether appellant was the person who robbed
her.  Carlos Cruz also provided a tentative identification of appellant.  He
believed appellant looked more like the robber than any of the others depicted
in the photo lineup.  However, Cruz, who does not speak English well, testified
that he was confused by the police officer=s instructions, which had been
translated into Spanish by a patron of the bakery where Cruz worked, and
believed that he was only choosing the photograph that looked most similar to
his assailant, not the actual robber.  At trial, John Dufour, Janna Dufour, and
Robert Kelly each positively identified appellant as their robber.  Carlos Cruz
testified that appellant was not the person who robbed him.








Appellant
attempted to introduce evidence that an alternative perpetrator committed the
offense.  Gwendolyn Gamble, appellant=s grandmother, testified that her
son, Leonard Gamble, bore a family resemblance to appellant, lived with her and
appellant near the location of the robbery, and had been convicted of multiple
robberies close in time to the robbery.  However, the trial court excluded from
evidence photographs depicting the similarity of appellant and Leonard Gamble=s physical appearance as well as
indictments and judgments showing Gamble=s convictions for robberies dating
December 9, 2005 and January 1, 2006, one day before and twenty-two days after
the robbery-at-issue.  The trial court ruled such evidence was irrelevant and
its probative value was substantially outweighed by the probability of
confusing the jury.[2]  The jury
ultimately returned a verdict convicting appellant for aggravated robbery. 

II. Analysis

In two
issues, appellant contends the trial court erred in two of its evidentiary
rulings: (1) by excluding his proffered alternative perpetrator evidence and
(2) by admitting evidence of appellant=s extraneous offenses.  For all the
reasons set forth below, we cannot conclude that the trial court abused its
discretion.

A.        Standard
of Review

We
review the trial court=s rulings under the Texas Rules of Evidence for abuse of
discretion.  Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App.
2005).  A trial court abuses its discretion if its decision is outside the zone
of reasonable disagreement or if it acts without reference to guiding rules or
principles.  Montgomery v. State, 810 S.W.2d 372, 380, 391 (Tex. Crim.
App. 1990).  If the ruling was correct under any theory of law applicable to
the case, we must uphold the judgment.  Martin, 173 S.W.3d at 467.

B.        Alternative
Perpetrator Evidence Under Ramirez and Erwin

Appellant
argues that evidence of absent third party guilt should be evaluated under the
common law rules handed down by the Court of Criminal Appeals in Ramirez v.
State and Erwin v. State.  In Ramirez, the Court of Criminal
Appeals held: 








declarations of a third party admitting his guilt of
the crime for which the accused is on trial are admissible only when the State
is relying upon circumstantial evidence, when the guilt of such party is
inconsistent with the guilt of the accused, and when the facts show that such
party was so situated that he might have committed the crime.

Ramirez v. State, 543 S.W.2d 631, 632 (Tex. Crim. App. 1976), overruled
by Burks v State, 876 S.W.2d 877, 904 (Tex. Crim. App. 1987).  The Court of
Criminal Appeals seemed to expand this rule in Erwin v. State stating: 

the defendant must meet three criteria before evidence
of a third party=s guilt is admissible.  These criteria are (1) that
the State is relying only on circumstantial evidence, (2) that the guilt of the
third party is inconsistent with the guilt of the accused, and (3) that the
facts show the third party was so situated that he might have committed the
crime.

Erwin v. State, 729 S.W.2d 709, 716 (Tex. Crim. App. 1987), overruled by
Burks, 876 S.W.2d at 904.  However, Ramirez and its progeny,
including Erwin, were overruled by the enactment of the Texas Rules of
Criminal Evidence on September 1, 1986.  See Burks, 876 S.W.2d at 904
(stating the enactment of the Texas Rules of Criminal Evidence [now the Texas
Rules of Evidence] supersedes the common law rule set forth in Ramirez and
Erwin).  Accordingly, trial courts now refer to the Texas Rules of
Evidence rather than the common law in evaluating the admissibility of
evidence.[3]  See id.

C.        Alternative
Perpetrator Evidence Under The Rules of Evidence








Under
the Texas Rules of Evidence, the trial court follows a two-step process in
determining whether evidence is admissible.  See Montgomery, 810 S.W.2d
at 375B76.  First, the trial court must
decide whether the evidence is relevant.  Id. at 375.  Relevant evidence
is defined as evidence Ahaving any tendency to make the existence of any fact that is
of consequence to the determination of the action more probable or less
probable than it would be without the evidence.@  Tex. R. Evid. 401.  Second, the
trial court must determine if the evidence should be excluded because of some
other provision, whether constitutional, statutory, or evidentiary.  See
Montgomery, 810 S.W.2d at 376 (citing Tex.R. Evid. 402).  Under rule 403 of
the Texas Rules of Evidence, relevant evidence may be excluded if its probative
value is substantially outweighed by a number of counter-factors, including the
danger of confusion of the issues.  Tex. R. Evid. 403.  For relevant evidence to be excluded under rule 403,
the opponent of the evidence must show that its negative attributes
substantially outweigh any probative value.  Montgomery, 810 S.W.2d at
377.  Rule 403 favors admission of relevant evidence and carries a presumption
that relevant evidence will be more probative than prejudicial.  Gallo v.
State, __ S.W.3d __, 2007 WL 2781276, at *1 (Tex. Crim. App. 2007). 
However, in weighing probative value against rule 403 counter-factors, the
trial court must be sensitive to special problems presented by alternative
perpetrator evidence.  See Wiley v. State, 74 S.W.3d 399, 406 (Tex.
Crim. App. 2002).  Relevant evidence of an alternative perpetrator may be
excluded absent proof of a sufficient nexus between the crime charged and the
alleged alternative perpetrator.  Id.  Although it is unclear exactly
how much evidence is necessary to sufficiently prove a nexus between the
offense and allegedly guilty third party, Texas jurisprudence is clear that
evidence of third party guilt is inadmissible if it is mere speculation that
another person may have committed the offense.  Id. at 406B08.

In this
case, the trial court excluded appellant=s alternative perpetrator evidence
ruling that it was irrelevant and would be confusing to the jury.  We first
address the issue of relevancy.  








Despite
the trial court=s ruling, we conclude appellant=s proffered alternative perpetrator
evidence was relevant.  Identity was a material issue in this case and
vigorously contested at trial.  Three of the State=s witnesses identified appellant as
their robber at trial.  Additionally, the State presented evidence that John
Dufour and Robert Kelly each positively identified appellant in a photo-lineup,
as well as evidence that Janna Dufour and Carlos Cruz each made tentative
identifications of appellant from a photo-lineup.  Appellant testified at trial
and denied that he committed any of the robberies on December 10, 2005. 
Additionally, Carlos Cruz testified appellant was not the person who robbed
him, and Gwendolyn Gamble, appellant=s grandmother, testified that her
son, Leonard Gamble, had been convicted of multiple robberies, bore a family
resemblance to appellant, and lived with her and appellant on the date of the
offense-at-issue.  Appellant attempted to introduce photographs highlighting
the similarity in physical appearance between himself and Leonard Gamble, as
well as indictments and convictions of Gamble for robberies committed one day
before and twenty-two days after the offense-at-issue in an attempt to show it
was likely Gamble committed the offense-at-issue.  Had the jury believed
appellant=s proffered alternative perpetrator evidence then it would have made the
proposition that appellant robbed John Dufour less likely to be true. 
Therefore, we conclude that any evidence an alternative perpetrator committed
the offense-at-issue was relevant under rule 401.

Under
the Texas Rules of Evidence, due to the presumption of admissibility of
relevant evidence, the trial court could only exclude appellant=s proffered alternative perpetrator
evidence under rule 403 only if the evidence=s probative value was substantially
outweighed by a rule 403 counter-factor.  Even though we disagree with the
trial court=s specific rationale in excluding the evidence,  we must affirm the trial
court=s ruling if it is correct under any
theory of law. Martin, 173 S.W.3d at 467.








The
court ruled appellant=s proffered alternative perpetrator evidence was inadmissible
because it would lead to confusion of the issues.  Confusion of the issues
occurs when introduction of the contested evidence raises the probability that
the proof and the answering evidence that it provokes may create a side issue
that will unduly distract the jury from the main issues.  Henderson v. State,
29 S.W.3d 616, 627 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d).  Here, appellant=s proffered evidence addressed the
issue of identity.  As stated above, identity was the paramount issue in this
case.  There was no danger that the evidence would create a side issue because
the evidence addressed a material issue in the case.       

However,
in order to introduce alternative perpetrator evidence, appellant had to prove
a nexus existed between the alleged alternative perpetrator and the
offense-at-issue.  See Wiley, 74 S.W.3d at 406.  Appellant attempted to
show a nexus between Gamble and the offense-at-issue in his bill of exception
by demonstrating a chronology of Gamble=s offenses, similar modus operandi
between Gamble=s offenses and the offense-at-issue, Gamble=s access to the location of the
offense-at-issue, and the similarity of physical appearance between himself and
Gamble.  Appellant sought to introduce Gamble=s indictments and convictions for two
robberies dating December 9, 2005 and January 1, 2006, one day before and twenty-two
days after the offense-at-issue.  Through Gamble=s indictment for aggravated robbery
with a deadly weapon on December 9th, appellant attempted to show Gamble=s modus operandi was similar to the
offense-at-issue.  Appellant also introduced evidence that, at the time of the
offense-at-issue, Gamble lived with appellant near the location of the
offense-at-issue, demonstrating Gamble had access to the location of the
robbery.  Relying on the doctrine of chances, the common law rule under which
an unusual and abnormal element might perhaps be present in only one instance,
but that the more often similar unusual instances occur with similar results,
the less likely the abnormal element is likely to be the true explanation for
them; see Robbins v. State, 88 S.W.3d 256, 268 (Tex. Crim. App. 2002)
(Cochran, J., concurring); appellant argued that Gamble=s convictions for robberies one day
before and twenty-two days after the offense-at-issue led to the likely
conclusion that Gamble was the true perpetrator.








Although it is unclear exactly what constitutes sufficient
evidence to satisfy the nexus requirement under Wiley, we cannot conclude
this evidence is sufficient.  In order for a court to conclude there is a nexus
between an alleged alternative perpetrator and the offense-at-issue, there must
be something more than evidence that a person other than the criminal defendant
was committing similar crimes around the time of the offense-at-issue, the
evidence must connect the alleged alternative perpetrator to the specific
offense.  For example, 
appellant did not present evidence that Gamble=s offenses were committed at or near
the location of the offense-at-issue or present testimony from any of the
witnesses identifying Gamble as the robber.  Compare Wiley, 74 S.W.3d at 406
(holding alternative perpetrator evidence is mere speculation and inadmissible
where evidence showed a patron of defendant=s restaurant was Athrown out@ of the restaurant
for taking off his shirt, striking matches, and acting crazy several days
before the restaurant was destroyed by fire) with U.S. v. Stevens,
935 F.2d 1380, 1405 (3d Cir. 1991) (holding testimony of a victim of a second
robbery that defendant was not the perpetrator his robbery was admissible under
the reverse 404(b) doctrine, where both crimes: (1) took place within a few
hundred yards of one another; (2) were armed robberies; (3) involved a handgun;
(4) occurred between 9:30 p.m. and 10:30 p.m.; (5) were perpetrated on military
personnel; (6) involved a black assailant who was described similarly by his
victims; (7) the assailant stole wallets and rummaged though the victim=s pockets; and (8)
the fruits of both robberies, which occurred at Fort Dix, New Jersey, both
surfaced near Fort Meade, Maryland).[4] 
We agree that Gamble=s indictments and convictions indicate he
engaged in a spree of robberies overlapping the offense-at-issue.  However,
this evidence supports no conclusions other than that Gamble was committing
robberies around the time of the offense-at-issue.  It does not tend to connect
Gamble to the specific robbery of John Dufour on December 10, 2005, and
therefore it does not demonstrate the required nexus.  Appellant=s first issue is overruled.

 








D.        
Admission of Extraneous Offenses

In his
second issue, appellant contends the trial court erred in allowing the State to
present evidence of an extraneous offense committed the day of the
offense-at-issue.  Specifically, appellant contends that the extraneous offense
was inadmissible as contextual evidence or to prove identity because (1) the
modes of commission of the offenses-at-issue and the extraneous offense
differed; (2) the extraneous offense was inadmissible to show pattern;(3)
extraneous offense evidence is not admissible to prove identification; and (4)
the trial court prematurely allowed the extraneous offense evidence.  However,
we cannot conclude the trial court abused its discretion.

Under
the Texas Rules of Evidence, extraneous offense evidence is not admissible to
prove the character of a person in order to show action in conformity
therewith.  See Tex. R. Evid. 404(a).  However, the jury is entitled to
know all the relevant facts and circumstances surrounding a charged offense.  Moreno
v. State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986).  Contextual evidence
is admissible when several offenses are so intermixed or connected as to form a
single, indivisible criminal transaction, such that in narrating the one, it is
impracticable to avoid describing the other.  Rogers v. State, 853
S.W.2d 29, 33-34 (Tex. Crim. App. 1993).  Contextual evidence is admissible
only when the offense would make little or no sense without the extraneous
offense evidence.  Id.








Additionally,
while evidence of extraneous offenses is inadmissible to show action in
conformity with bad character, rule 404(b) provides that extraneous offense
evidence may be admissible for some other purpose, such as proof of identity.  See
Tex. R. Evid. 404(b); Harvey v. State, 3 S.W.3d 170, 175 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  However, raising the issue of
identity does not automatically render extraneous offenses admissible.  See
Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).  To be
admissible to show identity, an extraneous offense must be so similar to the
offense-at-issue that the offenses are marked as the accused=s handiwork.  Id.  Sufficient
similarity may be shown by proximity in time and place or by a common mode of
committing the offenses.  Ransom v. State, 503 S.W.2d 810, 813 (Tex.
Crim. App. 1974).  In Harvey, we held that where an accused used the
same mode of commission in the offense-at-issue and the extraneous offense,
committed both offenses in the same residential area, and committed both
offenses within an hour there was sufficient similarity between the
offense-at-issue and the extraneous offense for the trial court to admit the extraneous
offense evidence to prove identity.  Harvey, 3 S.W.3d at 175.








In this
case, the trial court allowed the State to present extraneous offense evidence
of the robbery of Robert Kelly for the purpose of Aidentification.@  Although the extraneous offenses
were not so intermixed as to form a single, indivisible criminal transaction,
and therefore the evidence was not admissible as contextual evidence; appellant
raised the issue of identity in his cross-examination of the State=s witnesses and in his
case-in-chief.   Indeed, as we have indicated above, identity was the primary
issue in this case, and extraneous offense evidence was admissible regarding
this issue.  The extraneous offense presented by the State was committed at
approximately the same time and place, and by a common mode of commissionBboth robberies were committed the
night of December 10, 2005, at the Camden Station apartment complex, by a
person armed with a handgun who approached his victims as they walked to or
from their apartments and threatened or caused injury with that weapon. 
Appellant argues that the State failed to prove the robberies in question were
so similar as to be marked as his handiwork because in the robbery of John
Dufour, the robber was unsuccessful and ran away after only threatening Dufour
with the gun, while in the robbery of Robert Kelly, the robber hit Kelly with
the gun when he did not comply with the robber=s demands quickly enough.  However,
the Court of Criminal Appeals has held that extraneous offenses may be
sufficiently similar to prove identity when there is either proximity in time
and place or a common mode of committing the offense.  See Ransom,
503 S.W.2d at 813.  Here, the offenses in question satisfied either of these
requirements.  The offenses were proximate in both time and placeBthe offenses were both committed the
night of December 10, 2005 at the Camden Station apartments.  Additionally, the
offenses were committed by a common mode of commissionBthe robber approached his victims as
they walked to or from their apartments and threatened them with a gun. 
Although the robber proceeded to strike Kelly before obtaining his property
while the robber ran away from Dufour before striking him or obtaining his
property, these differences are immaterial.  Some dissimilarities between the
charged crime and the extraneous offense do not automatically make the
extraneous offense inadmissible.  Ransom, 503 S.W.2d at 813B14.  We conclude the offenses were
sufficiently similar that evidence of the extraneous offense was admissible to
prove the issue of identity.

Appellant
also contends that extraneous offense evidence is not admissible to bolster a
witness=s identification of the accused.  He
argues the State selectively tried Dufour=s robbery in order to introduce
evidence of Kelly=s identification of appellant and present the jury with as
many complainant identifications of appellant as possible.  Appellant notes
that rule 404(b), while not an exhaustive list the reasons extraneous offense
evidence may be admitted at trial, does not list Aidentification@ as a proper purpose for the
admission of extraneous offense evidence.  See Tex. R. Evid 404(b). 
However, there will always be some element of identification when evidence is
offered for the purpose of proving the accused=s identity.  See e.g. Siqueiros v.
State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985) (en banc) (evidence of a
similar extraneous offense admissible because, inter alia,  the defense
strategy was aimed at undermining a witness=s identification of defendent). 
While appellant may be correct that if extraneous offense evidence were offered
for the sole purpose of bolstering identification when identity was not at
issue then such evidence would be inadmissible, in this case, where identity was
hotly contested, we cannot conclude the trial court abused its discretion in
admitting the State=s extraneous offense evidence.   








Additionally,
appellant contends that the extraneous offense could not be admitted under rule
404(b) because the State argued at trial that the extraneous offense was
admissible to show pattern.  Appellant argues that evidence of pattern is
inadmissible because pattern could only be used to show an accused acted in
conformity with bad character, a purpose inadmissible under rule 404.  See Tex.
R. Evid. 404(a).  Although evidence that an accused
has a pattern of committing offenses could implicate the prohibition on using
extraneous offenses to prove conformity with bad character, where identity is
an issue in the case, the Texas Rules of Evidence make an exception for the
introduction of extraneous offenses bearing the same modus operandi.  See Tex.
R. Evid. 404(b).  Where a pattern of offenses are so
similar that the offenses are marked as the handiwork of the accused and
identity is at issue, then extraneous offense evidence may be admitted to prove
identity.  See Lane, 933 S.W.2d at 519.  As stated above, identity was
the paramount issue, and the extraneous offenses were committed close in time
and place and by the same mode of commission.  Therefore, we cannot conclude
the trial court abused its discretion, despite the State=s argument that such offenses show a
pattern.








Finally,
Appellant seems to contend that the trial court prematurely permitted the State
to offer evidence of the extraneous robbery in its case-in-chief.  However,
appellant raised the issue of identity in his cross-examination of the State=s very first witness, attempting to
impeach the witness=s identification of appellant.  Impeachment of a witness=s identification testimony raises the
issue of identity for which extraneous offense evidence is admissible.  See
Burton v. State, 230 S.W.3d 846, 849B50 (Tex. App.CHouston [14th Dist.] 2007, no pet.) 
Regardless, even if the trial court prematurely admitted the extraneous offense
evidence, subsequently admitted evidence can render the error harmless.  See
Jones v. State, 587 S.W.2d 115, 120 (Tex. Crim. App. 1979).  In appellant=s case-in-chief, he presented an
alibi defense, thus firmly raising the issue of identity by positing that he
could not the person who robbed John Dufour because he was at a different
location at the time of the robbery.  Therefore, by affirmatively raising the
issue of identity, appellant rendered harmless any possible error in the trial
court=s admission of the extraneous
offense.  Appellant=s second issue is overruled.

Accordingly,
the judgment of the trial court affirmed.

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Opinion filed
December 20, 2007.

Panel consists of Justices Yates,
Seymore, and Edelman*.

Publish C Tex. R. App. P. 47.2(b).

 

 

 

 









[1]  The State presented evidence of Kelly=s robbery in its case-in-chief.  Appellant called Cruz
to testify regarding the issue of identity.





[2]  The photographs, indictments, and judgments were
admitted under a bill of exception for the appellate record. 





[3]  Appellant, in support of his contention that his
proffered evidence should be analyzed under the common law rule, cites Wieghat
v. State, 76 S.W.3d 49, 52 (Tex. App. San Antonio 2002, no pet.); and Gillespie
v. State, No. 01-94-01189-CR, 1997 WL 297549 at *8 (Tex. App.CHouston [1st Dist.] 1997, pet. ref=d).  These cases, decided after the enactment of the
Texas Rules of Criminal Evidence and Burks, applied the Erwin rule
to analyze the admissibility of evidence of absent third party guilt.  See
Wieghat, 76 S.W.3d at 52; Gillespie, 1997 WL 297549 at *7-8.  To the
extent that other intermediate courts of appeals have applied Erwin
regarding evidence of third party guilt after the enactment of the Texas Rules
of Criminal Evidence and the Texas Rules of Evidence, we note our respectful
disagreement.  See Burks, 876 S.W.2d at 904.





[4]  We could not identify any Texas case in which an
appellate court concluded a defendant presented evidence sufficient to fulfill
the nexus requirement since it was adopted by the Texas Court of Criminal Appeals.
Wiley v. State, 74
S.W.3d at 406.





*  Senior Justice Richard H. Edelman sitting by
assignment.